Please the court, my name is William Teterds and I represent the Appling plaintiffs in both cases. Are you going to argue a small case first or are you going to do it? If it was determined that the termination issue was reversible in the first case, it would moot the second case, the fraud on the court case. But it would seem to me you'd have to go back and figure it out before you could decide right on the spot. So I don't think it makes any difference. Okay. Go ahead and argue. Okay. Technically, a state farm, by the way, is also a defendant in the small case and the fraud on the court case. Right. But there are distinct issues. Pardon me? There are distinct issues. Go ahead. Definitely. Now, if we start with the small case, the fraud on the court case, it seems to me that this essentially just boils down to whether you think, like we do, that this is a distortion of the process, like Hazel Atlas and Pumphrey, or whether this was just business as usual or innocuous as state farm and the district court saw it. We think it is squarely within cases like Hazel Atlas and Pumphrey, a form of extrinsic fraud where the plaintiff was, by trick or artifice, as the term is used in intermagnetics, the plaintiff was deprived of the chance to present relevant and material evidence. By a lawyer saying he doesn't know anything or he doesn't have anything? Pardon me? What's the operative fact that created the fraud? Well, it's actually a sequence. I believe that the first thing that set up the whole situation was the exclusion of the Keller documents from state farm's regular document response. Obviously, anyone who saw that 1997 letter or the 88 video or the 74 video would have instantly known that Keller could be a pivotal witness on the termination issue. So I think the exclusion of the documents from the state farm response is the first step. And then the second step and the thing that we thought was the most outrageous thing was the pretended representation of Keller. So that when Mr. Doolittle saw a response to his subpoena, he thought it was Keller's response. And what we think is really bad about that is if you just call that business as usual, it seems to mean that every time you're in a complex situation like this with multiple parties and you get a third party and one of the attorneys for your adversary says, I also represent the third party, you have to challenge that. You can't rely on it. The advantage of challenging is that you make a record. Instead of us having to sit here and second guess what was said as an aside between lawyers, we have to figure out who struck John. It sounds to me like you were told something. Your side accepted it. She decided not to challenge it. You didn't have to. I don't see where there's fraud. While we want to get into policing, sort of informal communications between counsel, if you don't trust opposing counsel, challenge it. Make a record. We'll see what's going on. And then you'll have something going on. We had no reason not to trust opposing counsel. There was no history. And Keller, the way the objections were written, Keller was saying, I've been gone a long time. I don't have anything relevant to this case. And it was reasonable for Mr. Doolittle to believe Keller. He's got no ulterior motivation. And I think it was reasonable for Mr. Doolittle to assume that Ulrich represented Keller and that these were Keller's responses to what was a routine subpoena, in effect, and not that if Mr. Doolittle had known these were State Farm's responses and that State Farm was sitting there with a letter from just a year earlier, from 1997, from Keller, plus the videos, if Mr. Doolittle had known any of that, then it would have been easy to challenge the representation at that time. But we're not actually talking about challenging what was said in the letter. What we would have to be challenging is the fact of the representation, and that is the thing that we think is really wrong with this. The thing that lawyers said or that State Farm's lawyers said to Doolittle? No, not what they said to Doolittle. You're talking about the comment afterwards? No. They presented a document which said we represent Keller. That means Keller has authorized or at least consented to what we are saying. We're telling you Keller has no documents. Keller has been gone a long time. He doesn't know anything about this, and he doesn't want to be bothered. They told us that Keller was telling us that, and so you have a big case and a list of routine subpoenas, and you say, well, I don't want to chase after that fellow. He's not lying to me. He has no stake here. He's not my adversary. He's telling the truth. Doolittle was entitled to believe Keller was telling the truth. What he didn't know was that Keller had not even authorized or consented to any of that. Keller says, I didn't make those objections, and that's the real problem. It's the fact that the representation didn't exist when the objections were made, and the way they were phrased, if you look at it, it's not just the Florida Constitution and privacy and stuff like that. It's, I don't want to go rooting around in my files as an old person who's been gone a long time for material that is irrelevant. And they said that when the chief executive of State Farm had a letter from Keller that was less than a year old where he specifically said, you've got a lot of problem with these agents. Remember those problems we had back there, 1966? Remember how we revised that contract to assuage their problems so it couldn't be terminated at will? They've got a letter one year old when they did that. And they had a 1974 video from Keller where he explained, under the title of the Independent Contractor Arrangement, that this contract will not be terminated arbitrarily and capriciously. And they gave us videos from that time frame, a whole box of them, chronologically labeled, but pull that one. We've got about three minutes left. Do you want to save it for rebuttal? All right. I'll take a minute or two. Thanks. Thank you. May it please the Court. What appellants are asking this Court to do is something extraordinary in its appeal. What they're asking this Court is to reverse the district court's determination that plaintiffs did not meet their heavy burden of establishing fraud on the court. This is the district court that entered summary judgment below. And the heavy burden that they must meet is they must present facts  They must present facts not just that show that there was a discussion between counsel, not just that there was a misunderstanding or even a misstatement. And I emphasize that we have to accept those statements for purposes of this proceeding. We obviously do not accept them for any other purpose. But they have to show not just statements between counsel. They have to show a fraud on the court. That is, that some action was taken that was not just between counsel but something that went to the judicial process itself. Let me ask you a factual question, counsel. These representations about Keller's position, which were, I guess, forwarded through counsel, was he relying on statements made to him by State Farm or did he have any independent contact with Mr. Keller? I'm not sure I understand the Court's question. I believe, if I understand the question, the sequence was, if I can respond, there was a subpoena served on Mr. Keller. The record does not show how plaintiff's counsel decided that Mr. Keller had information. Mr. Keller's declaration, which is part of the complaint Well, then Keller called State Farm. Is that right? Then Mr. Keller called State Farm. Right. And said, I don't know anything about this. Can you take care of this? State Farm told Mr. Keller that it would take care of the subpoena on his behalf. State Farm, represented by Oreck, then responded to the subpoena with objections. Thereafter, there was a conversation alleged between counsel for the plaintiffs and Mr. Brick. Well, you haven't quite directly answered my question. Did Mr. Brick have any independent conversations with Mr. Keller? Well, there are nothing alleged in the complaint. There's nothing alleged in the complaint as to any communications. That's like saying there's no controlling legal authority. What's the answer to Judge Fletcher's question? The answer, Your Honor, is I don't know. I drafted the objections to the subpoena, and I did not have communications with Mr. Keller. I don't know whether Mr. Brick did or not. You've never talked to him about it? I had not talked to him at that time. I mean, you seem to be beating around the bush. Subsequently, his deposition was taken. Now what do you know? Now I know that there were a number of communications between Mr. Keller and State Farm, that on an ongoing basis there were calls exchanged, that State Farm indicated that they would respond to the subpoena on his behalf. There were communications to that extent to myself. The subpoena was objected to.  There was no further communication regarding the subpoena. To my knowledge, there was no knowledge that certainly I had or Mr. Brick had as to what documents Mr. Keller had. So nobody bothered to find out? At that time, that's correct, Your Honor. Are you feeling a little squeamish about that? Your Honor, I'm not. You don't know won't hurt you. No, Your Honor. The subpoena, to be clear, the subpoena that asked for documents from Mr. Keller asked for documents from 1988 to the present. Mr. Keller had been gone from State Farm for 12 years at the time that the subpoena was issued. The issues in this case relating to the programs, exposure management and the like, those are programs that were instituted in the 1990s. Frankly, I couldn't understand what they were seeking in the subpoena. Many of the documents Mr. Keller might have had presumably were documents that State Farm would have produced. It was my full expectation, after making the objections, that if counsel had something in mind specific, they would come to me and we would thrash it out. Counsel didn't pursue it. So the district court seems to have concluded that you didn't commit fraud on the court because what you did was simply a sharp practice and the other side should have been sharp enough to know you were engaged in sharp practices. Well, again, Your Honor, I do disagree with the characterization. The court, accepting the allegations as true, said there were the objections. It's just a sharp practice and the other side should have been just as sharp to catch you. That's what the district court said. I believe the district court said that the representation was appropriate based on the allegations, that the objections to the subpoena were appropriate, and the conversations that were alleged between Mr. Brick and between counsel, that they did not amount to fraud, even assuming that they occurred, because, in fact, at that time there was every ability for counsel to pursue discovery, every ability to pursue this matter, and those communications, even if they amounted to some type of fraud that would satisfy Rule 60b-3, did not amount to fraud on the court because nothing contained therein was in the judicial proceeding. Nothing was directed to the court. No evidence was presented by State Farm regarding Mr. Keller. And, in fact, the court was, in fact, aware that this did not occur in a vacuum. The court was fully familiar with the proceedings below. The court was aware, for example, counsel chose Keller for some reason. Counsel had some information that Mr. Keller had some relationship to the case. Counsel didn't pursue it. Counsel did take the deposition of Mr. Joslin. Mr. Joslin was also involved in the contract proceedings in the mid-1960s. Counsel could have asked Mr. Joslin any number of questions about Mr. Keller's involvement. But the bottom line is that there was a misrepresentation as to what Mr. Keller had told State Farm. I don't believe so, Your Honor. I believe that there was a misrepresentation. All that Mr. Keller told State Farm is please take care of the subpoena on my behalf. Well, then how does State Farm know that Keller doesn't have anything? At that point in time, State Farm does not know what Mr. Keller has. The allegation is then State Farm or told the other side he doesn't have anything. That is the allegation, which we have to accept as true for purposes of this proceeding. And if you accept that it's true, I mean, how do you know he doesn't have anything if you haven't asked him? Again, I did not ask him. Did you affirmatively put the other side on the wrong track? Again, Your Honor, I did not have a discussion with Mr. Keller. I don't know whether Mr. Brick did or did not at the time he made the comment to Mr. Dudlow. Well, how can you possibly say he doesn't have anything without asking him do you have anything? Again, Your Honor. Making it up. Again, Your Honor, I did not have any discussions with... When I say you, I mean the whole mess of you. Again, Your Honor, I don't know what conversations Mr. Brick may have had with Mr. Keller. What I know is... Well, have you ever asked him what conversations he had or from whom you got this information that Mr. Keller had nothing? Pardon me, Your Honor? The allegation that you... What you said was Mr. Keller had nothing. That's what Mr. Brick said. Well, you're tagged with it too. You're his partner. Okay. Or were his partner. I guess he's on the bench. Where's he? No. He's on the bench, Your Honor. He's on the bench, Your Honor. I know. Do you want us to drag him in here? No, Your Honor. I'm just trying to respond to the questions. And I honestly don't know what miscommunications Mr. Brick had with Mr. Keller. Well, I think you should know. Well, and that's part of the problem, Your Honor. I was trying to limit myself to the allegations of this complaint. Had plaintiffs filed their motion in a timely fashion, we would have been able to have a complete record, complete with declarations by Mr. Doodle and declarations by Mr. Brick and declarations by myself for a full record. But if you told the truth, none of this would have happened. But, Your Honor, the objections to the subpoena were to the face of the subpoena and were entirely proper and appropriate. Judge Jenkins indicated that. The subpoena sought documents without any limitation on subject matter from a gentleman who had been gone from State Farm for 12 years. The objections essentially said, this is burdensome. You're asking me to produce documents in San Francisco, and it seeks documents that probably invade his privacy. That was the objection. Now, there was an alleged conversation thereafter between Mr. Doolittle and Mr. Brick, which, again, for the record, that conversation I have discussed with Mr. Brick. That conversation did not occur, as Mr. Doolittle says. I can tell you that. Again, that's outside the record, but I want that clear. So what we have here, again, and this is, I emphasize, a fraud on the court case. The allegation and the case law, Vanders is a case in point, to establish fraud on the court, you have to have more than communications between counsel, more than just a discovery issue. So I guess your argument is it's only fraud on counsel, not fraud on the court. As alleged, it is at most fraud on counsel. But as we pointed out, and I emphasize, they make facile allegations. It was State Farm that presented not just the facile allegations of what Mr. Keller's documents showed. We are the ones that asked the court to take judicial notice. We are the ones that transcribed the portions of the video. We are the ones that established it. Those portions of the video are nothing different from what State Farm had provided. We had provided the agency executive manual which said exactly the same thing. So the notion that somehow there was some smoking guns that Mr. Keller had that were withheld in order to somehow mislead counsel, we submit there's nothing in the record to support that. As Judge Jenkins also noted, there's nothing to suggest that there were any further communications or actions taken by State Farm that in any way impeded discovery regarding this subject matter. There's nothing to be said that they could not have and did not. We've got three minutes. Your Honor, I think you have it right. We were not as sharp. I think that's the way the district court saw it. And that's the breaks of the game. I think the way you summarize this is the way it happened. Just a couple of quick details. Keller is very clear. This is Rule 12. Keller is very clear in the complaint. He contacted State Farm, asked them what the case was about. He expected to hear back from them. He set about reorganizing his file to respond to the subpoena, and he never heard from them again. That's what the complaint says right now. And he had the 97 letter, the 88 video in his files. He was represented, we thought, by Orrick Harrington. And so even if somebody had tipped us that Keller was a pivotal person on the termination issue, the one surviving member of the people who changed the contract, we actually couldn't go directly at him because he was represented by Orrick, we thought. What I think is he wasn't represented by Orrick ever. Orrick represented State Farm, and they sharply fooled us. And I think it is right in Hazel Atlas and Pumphrey. In Hazel Atlas, which is the one that said when you have something like this, you don't even have to bother about the diligence issue because it's an institutional problem. In Hazel Atlas, the party attributed an article to a disinterested third party. That's very close to this. In Pumphrey, there were a couple of videos, one of them unfavorable to their side. They deliberately held that back. Those are perfectly in line with this case. That's all I have. Thank you. You might as well just keep standing there. Unless you want to take a break or get a glass of water. I'm okay. Thank you.
judges: B. Fletcher, Kozinski, Trott